UNITED STATES DISTRICT COURT
SOUTHERN DISRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA

                - V-                                           23-CR-353 (LTS)

AMIER WILSON
                DEFENDANT,
-------------------------------------------------------------------X

# SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT AMIER WILSON

Angus James Bell, Esq.
LAW OFFICE OF A. JAMES BELL
30 Wall Street, 8th Floor
New York, New York  10005
T: (212) 804-5765
F: (718) 504-6351

*Attorney for Defendant*
*Amier Wilson*

UNITED STATES DISTRICT COURT

SOUTHERN DISRICT OF NEW YORK
----------------------------------------------------------------------X

UNITED STATES OF AMERICA

              - V-                                                                                          23-CR-353 (LTS)

AMIER WILSON
                DEFENDANT.
----------------------------------------------------------------------X

### SENTENCING MEMORANDUM ON BEHALF
### OF DEFENDANT AMIER WILSON

**I.      INTRODUCTION**

This memorandum is submitted on behalf of Amier Wilson who is scheduled for sentencing before the Court on July 25, 2024 at 11 am.  This sentencing memorandum documents the defendant's individual characteristics for the Court's consideration, to assist the Court in determining a sentence that serves the sentencing goals of 18 U.S.C. § 3553(a) and also in this difficult case, the interest of justice.

As will be more fully discussed below, Mr. Wilson's unique set of circumstances, including his horrific childhood and related traumas, as well as the term of imprisonment he is currently serving for related conduct, warrant the Court's consideration. Mr. Wilson is mindful that the Court is required to impose a 60-month term of incarceration on Count 3 that must run consecutively to any other term of imprisonment imposed. Counsel however agrees with the recommendation of Probation that any additional sentence should run concurrent with the undischarged sentence imposed in the matter of 21Cr570 (MKV)[1]. Additionally, Mr. Wilson respectfully requests that the Court determine that the

---

[1] Presentence Investigation Report submitted by USPO Michelle Millan dated February 28, 2024 filed in the matter of US v. Amier Wilson 21Cr570 (MKV) at docket no. 265; See, Recommendation at Page 42

2

period of time the defendant has served since his arrest and incarceration on April 13, 2022 (see, Indictment 21Cr570 (MKV) was a term of imprisonment "result[ing] from another offense that is relevant conduct to the instant offense of conviction".[2] This determination will allow the Court to adjust the sentence in this matter by twenty six (26) months, as that term will not be credited to Mr. Wilson by the Bureau of Prisons,[3] and further order that any remaining sentence run concurrently with the defendant's aforementioned sentence.[4]  Mr. Wilson suggests that such a sentence is in conformity with the plea agreement entered into between the parties and will adequately achieve the purposes of sentencing in this case.

When Mr. Wilson eventually reaches the supervised release portion of his sentence, we request that the following special conditions be mandated by the Court: 1) participation in an intensive substance abuse counseling and treatment, 2) mental health treatment, 3) family counseling and 4) educational/vocational training.  We also seek the Court's recommendation that his sentence be served in the Otisville Federal Correctional Institution or, in the alternative, a correctional facility in close proximity to New York City and/or within the Northeast region to facilitate family visits.

## II.    BACKGROUND

Mr. Wilson is charged in the Superseding Indictment ("S1") with various offenses related to multiple robberies and possession of a firearm occurring on or about October

---

[2] See United States Sentencing Guideline § 5G1.3(b)
[3] U.S.S.G. § 5G1.3(b)(1)
[4] U.S.S.G. § 5G1.3(b)(2)

30, 2021, March 31, 2022 and April 1, 2022, in the vicinity of the Mitchell Houses.[5]. The charged offenses are in violation of Title 18, United States Code, Section 1951 and 2, as well as Title 18, United States Code, Section 924(c)(1)(A)(i) and (ii) and (2). Collectively, these offenses carry a mandatory minimum of 5 years to a maximum term of life.

On January 4, 2024, Mr. Wilson appeared before this Honorable Court and pled guilty to Counts 3, 4, and 6 of the S1 Superseding Indictment. Although the Pre-Sentence Investigation Report ("PSR") provides a great deal of information about Mr. Wilson's personal history and information relevant to the instant offense, it is important to note that at the time of his arrest, Mr. Wilson had 2 prior contacts with the criminal justice system: at age 16, a November 16, 2-14 Second Degree Robbery, which was adjudicated as a youthful offender, 6 years' probation, on January 7, 2006, and at age 21, a January 14, 2020 Disorderly Conduct, which resulted in a Conditional Discharge on October 15, 2020.

---

[5]In this submission counsel argues that all of the prior offenses conduct charged in the matter of 21CR570 (MKV) is relevant conduct to the instant offense under the Relevant Conduct Guideline section 1B1.3. U.S.S.G § 5G1.1, Application Note 2(A). In that prior offense, the Government charged that from in or about 2017 to present, Mr. Wilson was a member of the ABG gang, a criminal organization whose members and associates engaged in, among other activities, acts involving murder, robbery and narcotics trafficking. The Government further alleged that ABG operated in and around the Mitchel Houses in the vicinity of 135th and 138 Streets as well as between Lincoln and Willis Avenues in the Bronx, New York. Count One of the instant matter charged that on October 30, 2021, Mr. Wilson participated in a robbery of a doughnut shop located at 132nd Street and Bruckner Boulevard in the Bronx, New York. Count Four and Court Six of the instant matter charged that on March 31, 2022 and April 1, 2022 respectively, Mr. Wilson participated in two robberies of a convenience store located at 138th and Willis Avenue in the Bronx, New York. It is undisputed that these robberies occurred within the charged time period of the racketeering conspiracy (2017 to present), occurred within blocks of the charged operating territory of the ABG, in and around the Mitchel Houses in the vicinity of 135th and 138th Street as well as between Bruckner Boulevard in the Bronx, New York and that as charged in the prior matter, Mr. Wilson was at all relevant times, a member of the ABG gang.

### III. THE PLEA AGREEMENT AND PRE-SENTENCE REPORT

#### 1. Relevant Case History / Guilty Plea

On April 13, 2022, Mr. Wilson was arrested on charges related to docket 21Cr570 (MKV) and on or about October 4, 2022, he was formally charged with conduct associated with this docket. The arrest followed an investigation conducted by the New York City Police Department ("NYPD"), and Homeland Security Investigation ("HIS"). Since the date of his arrest, Mr. Wilson has remained in custody pending prosecution.

As noted above, on January 4, 2024, Mr. Wilson appeared before this Honorable Court and pled guilty to Counts 3, 4, and 6 of the S1 Superseding Indictment, pursuant to a plea agreement with the government, dated October 18, 2023, and duly executed by Mr. Wilson and counsel, on October 30, 2023.  In pleading guilty to the aforementioned counts, Mr. Wilson admitted to participating in multiple robberies and possession of a firearm during and in relation to a Hobbs Act Robbery in violation of Title 18, United States Code, Section 1951 and 2, as well as Title 18, United States Code, Section 924(c)(1)(A)(i) and (ii) and (2).

#### 2. Federal Sentencing Guidelines Calculations

Although the USSG are advisory, the Court is required to independently calculate the advisory sentencing range.  Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Probation Officer Michelle Millan conducted an interview of Mr. Wilson on February 16, 2024, and prepared a Presentence Investigation Report ("PSR"), which included a calculation of the applicable advisory Sentencing Guidelines for this case as 63 to 78 months, followed by a mandatory minimum consecutive sentence of five years' on Count 3.  See, PSR, ¶ 99, page 19, indicating a total offense level of 26, and a

criminal history category of II.

At PSR ¶ 97, page 19, Probation calculated a total offense level of 26, as opposed to 24 as stipulated by the parties. The plea agreement groups the robberies that occurred on March 31, 2022, and April 1, 2022, as the counts involved the same victim and two or more acts or transactions constituting part of a common scheme or plan. However, pursuant to § 3D1.2 (application note# 4), the robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm; as such, treated the robberies as separate instances.

The PSR at ¶ 98, page 19 further notes that Probation calculated two criminal history points as opposed to the three points stipulated by the parties in the plea agreement. Probation did not assess status points for Mr. Wilson being under NYC Probation supervision during the commission of the instant offense. Additionally, given that Mr. Wilson has less than seven criminal history points, Probation concluded that USSG § 4A1.1(e) is not applicable. The stipulated plea agreement also does not include Mr. Wilson's other federal case under docket# 21 CR 570 (MKV), for which he pled guilty on January 4, 2024, before the Honorable May Kay Vyskocil. As such, one additional criminal history point was assessed pursuant to § 4A1.2 (a)(4).

Probation thereafter calculated a total offense level of 26 with a Criminal History Category of II, and a guideline imprisonment range of 63 to 78 months, as opposed to a total offense level of 24 and a criminal history category of III, with a guideline imprisonment range of 70 to 87 months' imprisonment, followed by a mandatory minimum consecutive sentence of five years' imprisonment on Count 3.

**IV.   This Court Should Apply U.S.S.G § 5G1.3(b) and Credit Mr. Wilson's Sentence The Period Of His Incarceration Since His April 13, 2022 Arrest on**

**Relevant Conduct and Order that His Sentence for the Instant Offense Shall be Imposed to Run Concurrently with the Remainder of His Un-discharged Term of Imprisonment**

U.S. Sentencing Guideline Section 5G1.3 dictates how and when courts are permitted to adjust sentences to account for undischarged terms of imprisonment[6] and although seemingly straightforward, has been described as "one of the most complex" sentencing guidelines by the Second Circuit. *U.S. v. Whiteley*, 54 F.3d 85, 87 (2d Cir. 1995). Section 5G1.3 applies when the defendant being sentenced is subject to an undischarged term of imprisonment pursuant to some other proceeding and where "all of the prior offense conduct is relevant conduct to the instant offense under the Relevant Conduct Guideline section 1B1.3" U.S.S.G. § 5G1.3, Application Note 2(A).

U.S.S.G. § 5G1.3 identifies four distinct instances where the application of the guideline is appropriate. Section 5G1.3(a) speaks to those situations where a defendant commits the offense for which he is to be sentenced, while serving a term of

---

[6] §5G1.3. Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment
(a)     If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
(b)     If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>    (1)     the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>    (2)     the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.
(c)     If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.
(d)     (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

7

imprisonment or after being sentenced but prior to commencing the term of imprisonment. Section 5G1.3(c) applies to defendants not subject to 5G1.3(a) but who are subject to an anticipated state term of imprisonment from an offense that constitutes relevant conduct. Section 5G1.3(d) is the catch-all provision that applies to "any other case" involving undischarged terms of imprisonment. Section 5G1.3(b) applies to Amier Wilson and directs the Court to impose a sentence as follows:

> "(1)   the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
> (2)   the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment."

U.S.S.G. § 5G1.3(b)(1) – (b)(2)

Regarding relevant conduct, the plea agreement stipulates that the defendant's offense conduct underlying the charges in the instant matter relates to multiple robberies that occurred on or about October 30, 2021, March 31, 2022 and April 1, in the vicinity of 132nd and Bruckner Boulevard in the Bronx, New York. Although the conduct identified in the instant Indictment and the indictment in the matter of 21Cr570 (MKV) are not identical, it is important to note that the "past and present offenses" need not be identical, or possess the same elements, See *U.S. v. Williams*, 260 F.3d 160, 166 (2d Cir. 2001); rather the focus should be on whether the conduct underlying the first offense was also the basis for prosecution of the second. Id.

In the matter before the Honorable Mary Kay Vyskocil, 21Cr570 (MKV), the Government charged that from in or about 2017 to present, Mr. Wilson was a member of the ABG gang, a criminal organization whose members and associates engaged in, among other activities, acts involving murder, robbery and narcotics trafficking. The

8

Government also alleged that ABG operated in and around the Mitchel Houses in the vicinity of 135th and 138 Streets as well as between Lincoln and Willis Avenues in the Bronx, New York. Count One of the instant matter charged that on October 30, 2021, Mr. Wilson participated in a robbery of a doughnut shop located at 132nd Street and Bruckner Boulevard in the Bronx, New York. Count Four and Court Six of the instant matter charged that on March 31, 2022 and April 1, 2022 respectively, Mr. Wilson participated in two robberies of a convenience store located at 138th and Willis Avenue in the Bronx, New York.

It is undisputed that these robberies occurred within the charged time period of the racketeering charged in the 21Cr570 (MKV) matter, (between 2017 to present) and that the robberies occurred within the vicinity of the charged operating territory of the ABG; in and around the Mitchel Houses in the vicinity of 135th and 138th Street and Bruckner Boulevard in the Bronx, New York. Additionally and as charged in the prior matter, Mr. Wilson was at all relevant times charged in both indictments a member of the ABG gang. As such, the issue becomes, would the Court have considered as relevant conduct the charged robberies identified in the instant matter in sentencing Mr. Wilson on the racketeering indictment? Counsel respectfully submits that the answer is yes. U.S.S.G § 1B1.3 and the U.S. Supreme Court[7] would demand as much.

---

[7] "[T]he Guidelines certainly envision that sentences for multiple offenses arising out of the same criminal activity ordinarily will be imposed together, they also explicitly contemplate the possibility of separate prosecutions involving the same or overlapping "relevant conduct." See USSG § 5G1.3, comment., n. 2 (addressing cases in which "a defendant is prosecuted in . . . two or more federal jurisdictions, for the same criminal conduct or for different criminal transactions that were part of the same course of conduct"). There are often valid reasons why related crimes committed by the same defendant are not prosecuted in the same proceeding, and § 5G1.3 of the Guidelines attempts to achieve some coordination of sentences imposed in such situations with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (i.e., had all of the offenses been prosecuted in a single proceeding). See USSG § 5G1.3, comment., n. 3." *Witte v. United*

As it is demonstrably clear that § 5G1.3(b) applies to Mr. Wilson, the defense seeks its application in accordance with (b)(1) and (b)(2).

V.     **PERSONAL HISTORY AND CHARACTERISTICS**

    1.     **History and Characteristics of Amier Wilson**

Without question, Mr. Wilson was born into a set of risk factors and unfortunate circumstances practically from birth that served to frame the trajectory of his life that followed.  Mr. Wilson was born in the Bronx, New York on October 16, 1998, the only child to the union of Shawntey Smith and Edward Wilson.[8]  When Mr. Wilson was about five years old, his parents divorced, and he went to live with him mother in NYCHA housing.  At seven years old, his mother was diagnosed with bipolar and schizophrenia, which according to his older sister, had started to manifest earlier than the actual diagnosis.  Though at a very tender age at the time, Mr. Wilson took it upon himself to do the grocery shopping for the home and to care for his mentally ill mother.  He often stayed home from school to make sure that nothing happens to his mother during her 3-4 days spells of bipolar disorder and schizophrenia outbreaks.  Additionally, at seven years old, as Mr. Wilson mother's mental health continued to decline, he witnessed his mother stabbing his father and thereafter is arrested for the assault.  Even more, while Mr. Wilson was in his teens, his mother was treated for a brain tumor and breast cancer, and she eventually died in her sleep on May 7, 2022, less than a month after Mr. Wilson was arrested on this case.

---

*States*, 515 U.S. 389 (1995).
[8] Mr. Wilson is the only child born to the union of his mother and father. However, both his mother and father have children born from other relationships that were raised together with Mr. Wilson as a family unit.  We reference these siblings and their impact on Mr. Wilson's life in this submission.

As laid out in Mr. Wilson's sentencing mitigation report, conducted by Kathleen O'Boyle, Mr. Wilson's dysfunctional childhood was compounded by him witnessing his mother bringing different men in and out of the home, and him having to assume the role of the "man of the house" from an immature age.  As a "parentified child," Mr. Wilson's natural process of maturing was disrupted, which as in this case, caused long-term negative effects on Mr. Wilson's physical and mental health.  As a child, on the rare occasions that Mr. Wilson ventured out from staying at home to take care of him mother, Mr. Wilson was repeatedly bullied at school and on neighborhood playground due to his small stature.

This information is brought to the Court's attention not to excuse Mr. Wilson's conduct, for he fully accepts responsibility for his actions, but rather to place into context how and why he came to make the poor choices that led to his participate in these charged crimes.  The facts, circumstances, and conditions that surround Mr. Wilson's upbringing and development, we submit, will assist the Court in arriving at a sentence that is sufficient but not greater than necessary to reach the sentencing goals of Congress to punish Mr. Wilson for the crimes he has committed.  The facts and circumstances of Mr. Wilson's physical, mental and psychological trauma are significant factors we argue, mitigate in favor of a sentence of 60-month term of incarceration with any additional sentence to run concurrent with the undischarged sentence imposed in the matter of 21Cr570 (MKV).

Of course, counsel does not suggest that any set of circumstances or even the most severe risk factors are justifications for the crimes that Mr. Wilson committed.  Nor does counsel seek to excuse this criminal behavior.  The Court should know that Mr.

11

Wilson continues and has always expressed to me a genuine, heartfelt sense of regret and remorse for his conduct. He has accepted responsibility for his action, and further accepts that a period of incarceration will ensue, and the toll it will inevitably take on him and his family. Counsel seeks only to present Mr. Wilson's history in a manner that reflects the reality of so many young men from the New York City Housing projects, most with tumultuous and traumatic upbringing.

Predictable, in light of Mr. Wilson's history, it is simple to see how the risk factors and situations present in his life profoundly impacted his life choices and decision making. Poverty, enduring domestic violence, parental abandonment and living in a drug infested and violent community are substantial risk factors that inevitably work to derail even the most grounded among us. Missing protective factors such as positive role models, individual skills and opportunities presented in life inevitably assist to balance the risks we all face. Mr. Wilson had very few of these protective factors working in his favor.

As noted by Mr. Wilson's half-sister, Ms. Quanaisha Smith, a forensic psychologist and current doctoral student at The Chicago School of Professional Psychology, research postulates that PTSD is more prevalent among African Americans, and can be explained in part by individual socioeconomic disadvantage and increased rates of acute trauma that one is exposed to. Ms. Smith went on to assert that Mr. Wilson's exposure to high rates of crime, and violence, as well as living in disadvantaged neighborhood has predisposed him to PTSD, the internalization of which can in turn lead to aggression and hyper-vigilance, as well as maladaptive behavior.

The culmination of these risk factors and the resulting damage to the emotional spirit of this young man, eventually distorted his view of life and those "common" values kept by those of us un-besieged by these fateful circumstances. Before his early teenage years, at the age of twelve years old, young Amier Wilson was further handicapped by chronic marijuana smoking, and seeking love and self-value in the streets, a dangerous endeavor and that all too often leads to unfortunate contacts with the criminal justice system. By his late teens, when Mr. Wilson became a member of the ABG gang, he recounts that his new "family" watched out for him, protected him and in some ways, were much less dysfunctional than his own biological family.

Mr. Wilson's arrest, conviction, and uncertain period of incarceration in the instant matter however has served as a wake up call and a step forward toward lasting rehabilitation. More importantly he fully accepts responsibility and articulates remorse for his own conduct. He sadly acknowledges the impact of his conduct and his punishment on the lives of his family and most significantly on his father, whom he refers to as his best friend. Despite the realization he faces a significant period of incarceration as a result of these charges, Mr. Wilson expresses neither resentment nor anger regarding his circumstances. He remains hopeful for a future with meaningful employment so he can financially support himself in order to have a successful and productive future life.

An influential study by 39 experts on child psychopathology convened by the Department of Justice, Office of Juvenile Justice and Delinquency Prevention (OJJDP), identified particular risk and protective factors that are crucial to developing effective early intervention and protection programs for very young offenders.[9]

---

[9] See, Bulletin Series, *Risk and Protective Factors of Child Delinquency*, US Dept. of Justice, Officer of

Professionals have learned a great deal about which risk factors are relevant for predicting criminality in teens and young adults. For instance, most professionals agree that early on in a child's life, the most important risks stem from individual factors and family factors (i.e., parental antisocial or criminal behavior, substance abuse, domestic violence, poor child-rearing practices). As the child grows older and becomes integrated into society, new risk factors related to peer influences, the school, and the community begin to play a larger role. A combination of negative risk factors was present and served to derail Mr. Wilson's life. As set forth above and the PSR, Mr. Wilson was deeply impacted by the lack of options due to his family's constant financial struggles, the enduring domestic violence, parental abandonment and living in a drug infested and violence that permeated his neighborhood.

2. **Post Arrest Rehabilitation**

It should be noted that since his arrest and detention at the BOP's Metropolitan Detention Center, Mr. Wilson has used his time productively seeking rehabilitation and making strides toward possible redemption. Although Mr. Wilson was unable to participate in education classes at MDC, he looks forward to taking up vocation training in the BOP facilities to which he will be assigned to custody, as he aspires to earn his HVAC certification, as well as perfect his culinary skills in his quest to one day open up his own restaurant. Additionally, Mr. Wilson has aspirations to one day get a job as a sanitation worker, a security guard, and to open his own clothing brand.

The level of maturity attained in the past 26 months in custody at MDC though was not without missteps. Within days of his detention, he incurred his first of several

---

Programs, Office of Juvenile Justice and Delinquency Prevention 2003 (edited by Wasserman, Keenan, Trembly, Cote, Herrenkohl, and Petechuk).

infractions of BOP rules and received appropriate punishment. See PSR ¶ 25, page 11-12. However, since the last of these infractions a few months ago, his conduct has improved dramatically. His attitude and willingness to abide by the BOP rules has substantially evolved, a clear indication of his ability to succeed once he is released.

On a personal note, counsel has also noticed that Mr. Wilson is today a much more thoughtful and mature young man than the person I met at the time of my assignment. He has utilized his time in detention for genuine self-reflection. He has taken stock in himself and has spent time considering and planning his future, which inevitable will be invaluable in becoming a productive member of society upon his release from prison.

3. **The Other § 3553(a) Factors**

   i. Individual Deterrence

Mr. Wilson's person history suggests he would not be a recidivist. Although he has pleaded guilty to very serious crimes in this matter, his criminal history is not so extensive to suggest that he is beyond redemption. In addition, since his incarceration in April of 2022, Mr. Wilson has been planning and mentally preparing himself for the day when he will be released from prison to avail himself to the numerous opportunities that will await him. Its important to note that his half-sister, Quanaisha Smith, has agreed to financially support Mr. Wilson and help him to adjust back into society upon his release from prison. As noted in her letter to the Court, Ms. Smith reflects that Mr. Wilson is someone she can always depend on. He has helped people in the community by doing food drives and benefit events, as well as volunteer work with the NYC marathon. In addition, Mr. Wilson has given considerable thought into the development of his long-term career goals that are well within his capabilities and has already embarked on his

15

plan to achieve these goals.  Starting with obtaining his GED prior to his arrest.

    **ii.**        General Deterrence

In this case, Congress has sent a message of general deterrence by setting the possibility of lengthy prison sentences for the crimes for which Mr. Wilson has pled guilty to.  Although Mr. Wilson is optimistic that the Court will have mercy on him at sentencing, he respectfully submits that Congress' general deterrence provision is more than sufficient to meet this goal of sentencing.

    **iii.**        Need for Educational or Vocational Training and Medical or Substance Abuse Treatment

Mr. Wilson faces a substantial sentence that will be more than adequate to provide him with an opportunity to complete a verifiable GED program, and pursue other educational and vocational training.  Mr. Wilson could also benefit from participating in a substance abuse program.

**VI**    <u>**THE APPROPRIATE SENTENCE**</u>

The United States Sentencing Guidelines provide the "starting point and the initial benchmark" for sentencing, *Gall*, 128 S. Ct at 596, and the District Courts must "remain cognizant of them throughout the sentencing process," Id, at 596 n.6. It is now, however, emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. *United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) [Emphasis added]. "A district court may not presume that a Guideline sentence is reasonable, it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense. District Judges are, as a result, generally free to impose sentences outside the recommended range. *Id*. District judges may exercise discretion in fitting sentences to a defendant's individual characteristics. *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005).

In exercising this discretion, judges are guided by 18 U.S.C. § 3553(a), which directs them to impose a sentence that is "sufficient, but not greater than necessary" to, among other considerations, "reflect the seriousness of the offense, . . . promote respect for the law, and provide just punishment for the offense," and to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). The statute also directs courts to consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  It is submitted that a sentence of 60 months incarceration with any additional sentence to run concurrent with the undischarged sentence imposed in the matter of 21Cr570 (MKV) strikes this balance.

Mr. Wilson is an optimistic and hopeful young man, determined to become a productive citizen.  He has never been crippled by hopelessness or self-pity.  He wants very badly to succeed where so many others have failed.  He has recognized that much of his criminal behavior was tied to his own poor decisions.  He is not burdened by anger or an unearned sense of entitlement.  He is simply a young man who found himself in a tragic situation and was not mature or strong enough to overcome it.  He now has both the strength and maturity to overcome any set of social conditions no matter how difficult.

Thus, given all the facts and circumstances of this case as detailed herein and in the PSR, as well as the defense mitigation report, namely

- his early and complete acceptance of responsibility;
- his genuine remorse for his actions;
- his earnest attempts at rehabilitation including studying and taking the

17

       GED exam

- his very young age at the time of the offense

- his lack of guidance from male family members in his formative years

- his traumatic and tumultuous upbringing

it is respectfully submitted that a 60-month term of incarceration on Count 3 that must run consecutively to any other term of imprisonment imposed along with any additional sentence to run concurrent with the undischarged sentence imposed in the matter of 21Cr570 (MKV) would constitute a reasonable sentence for Mr. Wilson.

## **CONCLUSION**

     For these reasons, it is respectfully requested that this Court impose the aforementioned sentence. Thank you in advance for any and all consideration of this request.

Dated:  New York, New York
         July 11, 2024

                                        Respectfully submitted,

                                        -S-  A. James Bell
                                      Angus James Bell, Esq.
                                      LAW OFFICE OF A. JAMES BELL
                                      30 Wall Street, 8th Floor
                                      New York, New York 10005
                                      T: (212) 804-5765
                                      F: (718) 504-6351

                                      *Attorney for Defendant Amier Wilson*